WILLIAM A. HINMAN, plaintiff in error, v. REUBEN POPE, defendant in error.

*Error to Brown.*

Before any sale of land can take place for the non-payment of taxes, a judgment of the Circuit Court of the county where the land is situate must be rendered.

No principle of law is more firmly settled, than that a party claiming title to land under a sheriff's sale, must, in an action to recover the possession of such land, before he can read the sheriff's deed as evidence of his title, produce the judgment and execution which authorized the sheriff to make such sale. The sheriff is the agent of the law, and, unless there is a judgment and execution, he has no authority to sell. The same principle governs in the construction of the revenue law. The legislature did not dispense with the production of the judgment and execution; the rule of the common law, therefore, applies, and the party claiming title under a sheriff's deed, executed upon a sale for taxes, before he can read it in evidence, must, equally with a purchaser at an ordinary sheriff's sale, produce the judgment and execution in evidence.

The rule of the common law is well settled, that he, who affirms the existence of a material fact, must prove it, and the opposite party is seldom, if ever, required to prove a negative in the first instance.

The execution, or process, which authorizes the sheriff to sell lands for taxes, must recite that a judgment has been rendered by a competent Court against such lands for the non-payment of the taxes due thereon. The ninth section of the Act of 1840, repealing a portion of the thirty first section of the original Act, merely dispenses with the insertion of the collector's report in the process.

EJECTMENT in the Brown Circuit Court, by the plaintiff in error against the defendant in error, to recover possession of the N. E. 22, 1 S. 4 W. of the fourth principal meridian. The cause was tried at the September term 1844, before the Hon. Jesse B. Thomas and a jury. Verdict for the defendant.

*O. H. Browning & N. Bushnell, E. D. Baker,* for the plaintiff in error.

*A. Williams,* and *W. A. Minshall,* for the defendant in error:

The judgment and precept, under the law of 1839, must be produced before the deed of the sheriff can be read in evidence. Laws of 1838–9, pp. 18, 19, §§ 43, 44; see, also, *Ronkendorf* v. *Taylor's Lessees,* 4 Peters, 361, 362.

On the taxing power, see 561 and 562 of same volume; for the construction of such powers, *Lessees of Hughes* v. *Horrell*, 2 Ohio, 231, 232, 233; *Lessees of Holt's heirs* v. *Hemphill's heirs*, 3 do. 234.

For distinction between tax and patent titles, with respect to prerequisites, *Steed's Executors* v. *Course*; 2 Peters' Cond. R. 151; *Boardman* v. *The Lessees of Reed*, 6 Peters, 328, 342; and for the construction of powers of the officers in such cases, *Jackson* v. *Morse*, 18 Johns. 443.

In the exercise of a naked power, not coupled with an interest, every prerequisite of that power should precede it. *Williams* v. *Peyton's Lessees*, 4 Wheat. 77; 4 Peter's Cond. R. 395.

In Tennessee, under a law, in many respects like our Act of 1839, for the payment of taxes, it has been held essential to the validity of the sale, and of the deed made thereon, that every fact necessary to give the Court jurisdiction, should appear on the face of the record. *McClung* v. *Ross*, 4 Peters' Cond. R. 603, 604.

For construction of this power, see *Thatcher* v. *Powell's Lessees*, 6 Wheat. 119; 6 Peters' Cond. R. 28.

The recitals in a sheriff's, or collector's deed for lands sold for taxes are not even *prima facie* evidence of the compliance with the law. *Jackson* v. *Shepard*, 7 Cowen, 88; *Jackson* v. *Esty*, 7 Wend. 148.

But the defendant in error relies, for maintaining the judgment below, on a sound construction of the various provisions of the law of 1839, with respect to the judgment and precept.

The Opinion of the Court was delivered by

LOCKWOOD, J. This was an action of *ejectment*, commenced in the Brown Circuit Court, by the plaintiff in error against the defendant in error, to recover the possession of the North East quarter of section twenty two (22), in township one (1) south, and range four (4) west.

On the trial of the cause, the plaintiff proved that the defendant was in possession of the land at the institution of the suit, and then offered to read in evidence to the jury to prove

Hinman *v.* Pope.

title in himself, a sheriff's deed for the land in question, dated the 2d day of May, 1843. The deed was in the form prescribed by the statute, and acknowledged according to law, and reciting a sale of said land under a judgment of the Circuit Court of Brown county in favor of the State of Illinois against the tract of land above described, for the amount of the taxes, interest, and costs, assessed upon said tract of land for the year, 1839, and also reciting a precept, issued from said Court, authorizing such sale. To the reading of this deed the defendant objected, and the objection was sustained by the Court. The plaintiff then read in evidence, without objection, a judgment of the said Circuit Court, at its April term 1841, against said land for the taxes due thereon for the year 1839, and again offered to read the said deed in evidence, and it was again objected to and rejected by the Court. The plaintiff then offered to read in evidence, a precept of which the following is a copy, to wit:

"List of lands and other real estate situated in the county of Brown and State of Illinois, on which taxes remain due and unpaid for the years herein set forth.

| Names of the Patentees. | Present owners. | Year for which tax is due. | Description. | Valuation. | Tax. | Cost. | County. |
|---|---|---|---|---|---|---|---|
| Gideon Brunk. | | 1839 | 160 N.E. 22.1 S.4W | $1120. | 5·60 | 16 | Brown. |
| Andrew Gerald. | | 1840 | 160 N.E 30,1 N.2W. | $640. | 4·48 | 16 | Do. |

The foregoing is a correct list of taxable property upon which taxes remain unpaid for the the years 1839 and 40, in Brown county, State of Illinois.

March 24, 1841. Thomas S. Brockman, Collector of Brown county, Illinois."

"State of Illinois, ⎱ ss. The People of the State of Illinois, Brown County. ⎰ to the sheriff of said county, greeting:

You are hereby commanded to sell so much of the foregoing tracts of land, as shall be sufficient to satisfy the tax, interest and costs on each lot set opposite said lot in the foregoing list, and make due returns of your doings according to law.

In testimony whereof, I have hereunto set my hand, and affixed the seal of the Brown Circuit Court, at Mt. [L.S.] Sterling, this 20th day of April, A. D. 1841.

James Brockman, clerk."

on which precept were the following indorsements, to wit:

"This writ came to hand on the 20th day of April 1841, 4 o'clock P. M.

Iram Nye, S. B. C."

"Executed as I am commanded by sale of the within described tracts and parts of tracts of land for the amount of taxes, interest and costs on the same for the years 1839 and 1840, as will more fully appear by reference to the land sale register in the clerk's office of the County Commissioners' Court of Brown county, State of Illinois.

April 29th, 1841.            Iram Nye, S. B. C. Ills."

To the reading of this precept in evidence, the defendant, by his counsel, objected, and the Court sustained the objection and refused to permit it to be read to the jury in evidence. The plaintiff then again offered to read in evidence to the jury the sheriff's deed aforesaid, which, being objected to by defendant's counsel, was again rejected by the Court, and the plaintiff took an exception to these various rulings of the Court.

There being no other evidence offered, the jury found a verdict for the defendant, on which the Court rendered judgment for him.    The case is now brought to this Court for revision, and the several opinions of the Circuit Court rejecting the testimony offered by the plaintiff are assigned for error.

This Court is called upon by the assignment of errors to construe the revenue law passed February 26, 1839, touching the mode of proving title to land purchased for the non-payment of taxes under that law.    The questions presented for consideration are,

*First.*    Whether the Sheriff's deed executed in the form prescribed by that law was admissible in evidence, without preliminary proof of a judgment and execution, or a precept in the nature of an execution.

*Second.*    Whether, if an execution or precept is necessary, the paper offered was sufficient.

By the Act entitled " *An Act concerning the Public Revenue,*" passed Feb. 26, 1839, it is provided that when any person owning lands shall fail to pay the taxes assessed thereon, and the collector shall be unable to find personal property whereon to levy, sufficient to pay the taxes, the collector shall

make report thereof at the first term of the Circuit Court of the proper county, in each year for the preceding year, and upon having published notice, according to the directions of said Act, of such delinquency, and of his intention to apply to the Circuit Court for a judgment to sell said lands on a day to be mentioned in said notice, the Circuit Court is authorized to take cognizance of said application. By the 29th section of said Act, it is declared that "it shall be the duty of said Court, upon calling the common law docket of said term, if any defence be offered, by any of the owners of said lands so reported, or by any person having a claim or interest therein, to hear and determine the same in a summary way, without pleadings; and if no defence be made, the said Court shall pronounce judgment against the said lands, and shall thereupon direct the clerk of said Court to make and issue an order for the sale of the same; which shall be in the following form, to wit:

"State of Illinois, ⎱ ss. ⎰ County. Whereas A. B. collector of said county, returned to the Circuit Court of said county, on the day of 18 the following tracts and parts of tracts of land, as having been assessed for taxes by the assessor of said county of for the year 18 , and that the taxes thereon remained due and unpaid on the day of the date of the said collector's return, and that the respective owner or owners have no goods and chattels within his county on which the said collector can levy for the taxes, interest and costs due and unpaid on the following described tracts of lands, to wit:

And whereas due notice has been given of the intended application for a judgment against said lands, and no owner hath appeared to make defence or show cause why judgment should not be entered against the said lands for the taxes, interest and costs due and unpaid thereon, for the year or years herein set forth; therefore it is considered by the Court that judgment be and is hereby entered against the aforesaid tract or tracts of land, or parts of tracts in the name of the State of Illinois, for the sum annexed to each tract, or parcel of land, being the amount of taxes, interest and costs due severally

thereon; and it is ordered by the Court, that the several tracts of land, or so much thereof as shall be sufficient of each of them to satisfy the amount of taxes, interest and costs annexed to them severally, be sold, as the law directs."

The 30th section provides, "that the form as herein before set forth, shall be pursued as near as the nature of the case will permit. The 31st section declares, "that it shall be the duty of the clerk, within five days after the adjournment of said Court, to make out, under the seal of said Court, a copy of the collector's report, together with the order of the Court thereon, which shall hereafter constitute the process on which all lands shall be sold for taxes, and deliver the same to the sheriff of his county; and the sheriff shall, thereupon, cause the said lands to be sold on the day specified in the notice given by the collector for the sale of the same, and make return thereof to the said clerk, within twenty days after the day of sale."

These provisions of the revenue law are sufficiently explicit, that before any sale of land can take place for the non-payment of taxes, a judgment of the Circuit Court of the county where the land is situated, must be rendered. Whether this mode of collecting taxes by judgment is a wise mode, is a question not of judicial cognizance. It is sufficient for the Courts to know, that such is the will of the Legislature. No principle of law is more firmly settled, than that a party claiming title to land under a sheriff's sale, must, in an action to recover the possession of such land, before he can read the sheriff's deed as evidence of his title, produce the judgment and execution which authorized the sheriff to make such sale. The sheriff is the agent of the law, and unless there is a judgment and execution, he has no authority to sell. It was, however, contended in the argument, that the 43d section of the revenue law makes the sheriff's deed at least *prima facie* evidence of the existence of a judgment, and consequently dispenses with the necessity of its production by the plaintiff on the trial. That section is as follows: "Deeds executed by the sheriff as aforesaid, shall be *prima facie* evidence in all controversies and suits in regard to the right

of the purchaser, his heirs or assigns, to the land thereby conveyed, of the following facts:  1.  That the land conveyed was subject to taxation at the time the same was advertised for sale, and had been listed and assessed in the time and manner required by law.    2.  That the taxes were not paid at any time before the sale.  3.  That the lands conveyed had not been redeemed from the sale at the date of the deed. And shall be conclusive evidence of the following facts:  1. That the land was advertised for sale in the manner, and for the length of time required by law.   2.  That the land was sold for taxes as stated in the deed.   3.  That the grantee in the deed was the purchaser.   4.  That the sale was conducted in the manner required by law; and in controversies and suits involving the title to land claimed and held under and by virtue of a deed executed by the sheriff as aforesaid, the person claiming title adverse to the title conveyed by such deed, shall be required to prove, in order to defeat the said title, either that the said land was not subject to taxation at the date of the sale—that the taxes had been paid—that the land had never been listed and assessed for taxation, or that the same had been redeemed according to the provisions of this Act, and that such redemption was had or made for the use and benefit of persons having the right of redemption under the laws of this State; but no person shall be permitted to question the title acquired by a sheriff's deed, without first showing that he or she, or the person under whom he or she claims title, had title to the land at the time of the sale, or that the title was obtained from the U. States or this State after the sale, and that all taxes due upon the land have been paid by such person, or the person under whom he claims title as aforesaid.

It is evident, that in this section there is no express provision dispensing with the production of a judgment and execution.   Whenever the sheriff's deed is permitted to be read as evidence of the plaintiff's title, he may rest his cause, and the defendant is not permitted to show that no judgment has been rendered against the land, unless he can first prove the existence of certain facts, which, if they exist, will defeat the

plaintiff's right to recover, and thus render it unnecessary to prove the non-existence of a judgment. Should those facts exist, or the defendant be unable to prove their existence in case they do exist, the statute by its express provisions, deprives him of the right to prove that no judgment had been rendered, and thus a party may be deprived of his freehold without an opportunity being afforded him of proving that the sheriff, in making the sale, acted wholly without authority. This proposition will be apparent from a careful examination of this section of the Act. After the sheriff's deed has been received in evidence, the plaintiff, as has been shown, may rest his cause, and the defendant claiming title adverse to the title conveyed by such deed, is required before he is permitted to resist or defeat the plaintiff's title, to prove one of the following facts, to wit: *Firstly*, that the land was not subject to taxation; or *secondly*, that the taxes have been paid; or *thirdly*, that the land had never been listed for taxation; or *fourthly*, that the land had been redeemed from the sale, according to the Act, and that such redemption was had or made for the use or benefit of persons having the right of redemption under the laws of this State. And to throw further obstacles in the way of the defendant in his attempt to defeat the sheriff's deed, he is not permitted to prove any of the foregoing defences unless he can first show, that he, or the person under whom he claims, had title to the land at the time of the sale for taxes, or that his title was obtained from the U. States or this State after the sale, and that all taxes have been paid by the defendant, or the person under whom he claims title as aforesaid. Surely, it can hardly be supposed for a moment, that the legislature intended to invest a sheriff's deed with such tremendous efficacy, unless supported by the preliminary proof as required by the common law, of a regular judgment and execution; and certainly no court will, without the most explicit declaration of the legislature, sanction a construction that will produce such a result. Acts of the legislature should undoubtedly be so construed as to carry out the intention of the law-maker, but should never receive a construction that will perpetrate gross injustice,

unless the language of the Legislature is so clear and unequi-
vocal as to forbid any other interpretation.   Inasmuch, then,
as the Legislature have not dispensed with the production of
the judgment, it is left to the rules of the common law to
determine what preliminary proof shall precede the introduc-
tion of the sheriff's deed.   We can perceive no good reason
why the purchaser of land sold for taxes, who, in general, only
pays a nominal price for the land, should be more favored by
Courts, than a purchaser at a sheriff's sale under an ordinary
judgment rendered for a debt.

Should doubts, however, still exist, whether the Legislature
did not intend that the sheriff's deed should be given in evi-
dence, without first having produced a judgment and process
in nature of an execution, the 41st section of the Act ought,
in my opinion, effectually to remove them.   That section pro-
vides the mode by which proof of the judgment can readily
be furnished.   It is as follows: "The books and records be-
longing to the office of the clerks of the County Commission-
ers' Court, and the clerks of the Circuit Court, or copies
thereof, certified by the clerks of the Courts aforesaid, shall
be deemed sufficient evidence to prove the judgment and
sale of any land for taxes, or the redemption of the same, or
the payment of taxes thereon."

The judgment and sale are important facts in the plain-
tiff's chain of title, and the redemption of the land and the
payment of the taxes, are also important facts to enable the
defendant successfully to resist the plaintiff's right to re-
cover.   This section was, consequently, passed for the mutual
benefit of the parties.   The legislature, in providing this
mode to prove the judgment and sale, must clearly have
acted under the impression that it was incumbent on the
plaintiff to prove these facts.   The defendant needed no pro-
vision to enable him to prove the judgment and sale.   He
was safe, if no judgment existed.   His only danger consist-
ed in a judgment against his land, and certainly he could
have no motive to produce a judgment, that might bring
him into peril.

No one can doubt, as I conceive, if there was no judg-

Hinman *v.* Pope.

ment against the land, that the sheriff's sale and deed were void. If so, on whom, according to the well established rules of evidence, ought the burden of proving the judgment to rest? Clearly, on the plaintiff. The judgment lies at the foundation of his title, and is as essential to its validity, as the deed itself. When he commences his action against the possessor or owner of the land, he assumes the affirmative, that a judgment has been rendered, and the statute comes to his aid, and points out an easy mode by which he can produce the evidence. The rule of the common law is well settled, that he who affirms the existence of a material fact, must prove it, and the opposite party is seldom, if ever, required to prove a negative in the first instance. In many cases, it is utterly impracticable, and, in this case, although perhaps it could be done by an awkward and a somewhat difficult process, yet I can see no good reason why the long and well established rules of evidence should be subverted, and that, too, to favor a party who is asserting a harsh and rather ungracious legal right. From the foregoing considerations, the conclusion seems necessarily to follow, that before the sheriff's deed, executed upon a sale for taxes, can be read in evidence, it is incumbent on the party offering such deed, equally with a purchaser at an ordinary sheriff's sale, to produce the judgment and execution in evidence.

The second question presented in this case is, whether the execution or process offered in evidence was sufficient. The 31st section, above quoted, requires the clerk to make out, under the seal of the Court, a copy of the collector's report, together with the order of the Court thereon, which shall constitute the process on which all lands shall be sold for taxes, and deliver the same to the sheriff of his county; and the sheriff shall thereupon cause the said lands to be sold on the day specified in the notice given to the collector for sale of the same, and make return thereof to the said clerk within twenty days after the day of sale. The paper offered in evidence was not such process, either in form or substance, as is required to be issued by the 31st section, and was consequently void. It does not recite that any judgment

has ever been rendered by the Court. It is a mere mandate of the clerk to sell certain tracts of land for taxes, to be found in a collector's list appended to the paper. An execution, to be valid, must show on its face, that such a judgment has been rendered by a competent Court, as will justify its emanation.

It was, however, contended on the argument that the 31st section was repealed in 1840, by the Act entitled *"An Act to amend an Act concerning the public revenue."* By the 9th section of the last recited Act, it is provided that "so much of the 31st section of the Act to which this is an amendment, as requires the clerk of the Circuit Court to furnish a copy of the collector's report to the sheriff, be and the same is hereby repealed." The effect of this provision is only to dispense, in the process, with the collector's report; but, in every other respect, the process must conform to the requisitions of the 31st section. We are, consequently, of opinion that the Circuit Court decided correctly in rejecting the sheriff's deed without the production of the judgment, and also in rejecting the process issued by the clerk, as the authority on which the sale was made.

The judgment, consequently, of the Court below is affirmed with costs.

SCATES, J. delivered the following dissenting opinion:

I am of opinion, that the Court below erred in excluding the precept under which the sale was made. The Courts have adopted a rule of strict construction in these cases of naked powers, requiring a party to show a strict compliance with every prerequisite of law. This vigilance of the law, upon naked powers, is a substitute for that vigilance, which interest always prompts in those who execute a power coupled with an interest. But technical rules should have their limit, subservient to the public good. The government must have revenue, and it must be collected from all; it must be enforced from the unwilling and negligent by disposing of their property to those who are willing to advance the money. But it will be impossible to do so, if technical rules are applied to

defeat their rights acquired under sales, upon all and every plausible pretext of error, that ingenuity can, from time to time, suggest. The grounds of objection are made plausible in these cases, by the great disproportion between the consideration paid, and the value of the property purchased. If the consideration was full and adequate, these objections would frequently wear the aspect of a dishonest resistance of right. If the public confidence is destroyed, in ever acquiring a title free from technical objection, the State will be unable to collect her dues, as no one will advance, where the blunders of ignorance and negligence in the executive officers in not complying literally with the law, will be allowed to defeat their rights. Legislation can hardly keep pace with ingenuity, so as to remove or anticipate the grounds of objection. I should allow all substantial departures from the law, as valid objections. The objection to this precept is unsubstantial. It is not to the sale as irregular, or injurious to the owner. It is simply that the sheriff's precept commanding the sale, was not a copy of the judgment. It issued upon the judgment, for the sale of the lands condemned by the judgment, at the time and place mentioned in the judgment; yet it did not copy or recite the judgment. Therefore it is held void, and the purchaser acquired nothing. I am of opinion that this objection is wholly technical, and not substantial. The law directed the clerk to make out this precept, and gives the substance of its contents, and requires it to conform thereto as near as circumstances will permit. I cannot construe the law as making all void, because of an omission to insert in it the whole of the judgment.

Upon the exclusion of this precept depended the exclusion of the deed made under the sale. I am of opinion that the Court below erred in both, and that the judgment below ought, therefore, to be reversed.

*Judgment affirmed.*